IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ARGOS THERAPEUTICS, INC.[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 18-_____ (___) |

## MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO PAY PREPETITION WAGES, COMPENSATION, EMPLOYEE BENEFITS AND OTHER ASSOCIATED OBLIGATIONS

The above-captioned debtor and debtor-in-possession (the "Debtor") by and through its proposed undersigned counsel, hereby submits this *Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay Prepetition Wages, Compensation, Employee Benefits and Other Associated Obligations* (the "Motion"). In support of the Motion, the Debtor relies on the *Declaration of Matthew Foster in Support of the Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"),[2] and respectfully represents and sets forth as follows:

### JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[3] Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's federal tax identification number are 0007. The Debtor's corporate headquarters and its mailing address is 4233 Technology Drive, Durham, NC 27704.

[2] Except where otherwise indicated, capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

[3] Pursuant to rule 9013-1(f) of the Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy

2.      The statutory predicates for the relief sought herein are sections 105(a), 363, 507(a) and 541 of title 11 of chapter 11 of the United States Code (as amended or modified, the "Bankruptcy Code"), rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.

4.      The Debtor continues to operate its business and manage its properties as a debtor-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the date of this Motion, no trustee, examiner or statutory committee has been appointed in this Chapter 11 Case.

5.      Additional information regarding the circumstances leading to the commencement of this Chapter 11 Case and information regarding the Debtor's business and capital structure is set forth in detail in the First Day Declaration filed contemporaneously with this Motion and incorporated herein by reference.

## RELIEF REQUESTED

6.      By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto (a) authorizing the Debtor to: (i) pay and/or perform, as applicable, prepetition obligations to current employees including accrued prepetition wages, salaries, and other cash and non-cash compensation claims (collectively, the "Employee Wage Obligations");

---

Court for the District of Delaware (the "Local Rules"), the Debtor hereby confirms its consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

{1205.001-W0053102.}                                    2

(ii) reimburse employees for prepetition expenses incurred on behalf of the Debtor in the ordinary course of business (the "Employee Expense Obligations"); (iii) pay all related prepetition withholdings and payroll-related taxes and deductions (the "Employer Taxes and Deductions" and collectively with the Employee Wage Obligations, and Employee Expense Obligations, the "Employee Obligations") associated with the Employee Wage Obligations (as described herein) and (b) authorizing and directing financial institutions to receive, process, honor, and pay all related checks and electronic payment requests for payment of any prepetition Employee Obligations.

7. The Debtor seeks the relief requested in this Motion because any delay in paying any of the Employee Obligations described herein could severely disrupt the Debtor's relationship with its remaining employees, and irreparably impair morale at the very time their dedication, confidence and cooperation are most critical to the Debtor's restructuring efforts and the sale of its assets for maximum value. At this critical stage of the Chapter 11 Case, the Debtor simply cannot risk the substantial impact to its restructuring efforts resulting from the Debtor's failure to pay the Employee Obligations in the ordinary course of its business.

8. If the relief requested herein is not granted, the Debtor's employees would suffer hardship since these monies and benefits are needed to enable the employees to meet their personal obligations. Additionally, without the requested relief, the Debtor's stability would be undermined by the potential threat that an otherwise loyal employee would seek other employment.

### THE DEBTOR'S EMPLOYEE OBLIGATIONS

A. **Overview of the Debtor's Workforce**

9. As of the Petition Date, the Debtor employs three (3) full-time employees at its corporate headquarters in Durham, North Carolina (the "Employees").

10. The Debtor's Employees perform a variety of critical functions, including performing general and administrative services, providing, financial and human resource services, and other related tasks. The Employees' skills, knowledge, and understanding of the Debtor's infrastructure, operations and business relations are essential to the Debtor's efforts in this Chapter 11 Case.

11. Just as the Debtor depends on the Employees, these individuals also depend on the Debtor. Indeed, the Employees rely exclusively on payments received from the Debtor for their basic living necessities.

**B.     The Employee Wage Obligations**

   *i. Wages and Salaries*

12. In the ordinary course of business, the Debtor incurs payroll obligations for salary owed to its Employees. Salary for the Employees is paid semi-monthly on the 15th and the last day of the month. The average total monthly payroll obligations are approximately $36,000.

13. The Debtor administers its payroll and the disbursements of payroll funds through the services of Kronos Incorporated ("Kronos"). The Employees are paid by direct deposit.

14. As of the Petition Date, the Debtor estimates that no prepetition amounts are owed to the Employees for prepetition Employee Wage Obligations (collectively, the "Prepetition Wage Obligations").

15. By this Motion, the Debtor seeks the authority to continue to honor the Employee Wage Obligations on a postpetition basis in the ordinary course of business.

**C.     Other Benefits: Vacation, Personal, Sick Time, and Reimbursable Expenses[4]**

16. The Debtor offers its Employees other benefits, including vacation time, paid

---

[4] In the ordinary course of business, the Debtor paid certain of its expenses and obligations in the days leading up to the bankruptcy filing. Because it is unclear whether such amounts cleared prior to the Petition Date, the Debtor has included such amounts in the estimates contained herein.

holidays, other personal time off, and reimbursement of certain business expenses. These benefits are usual and customary, and they are necessary to enable the Debtor to retain qualified employees to operate its business.

    i.    *Paid Time Off*

17. The Debtor offers its Employees vacation time, holiday pay, and other personal time off. These benefits are usual and customary, and they are necessary to enable the Debtor to retain qualified employees. Generally, the Debtor's Employees are eligible to accrue paid vacation ("Vacation Time"), sick time ("Sick Time") and holiday pay ("Holiday Pay" and together with Vacation Time and Sick Time, "Paid Time Off"). The Employees may use his or her Paid Time Off at their discretion, subject to management preapproval of the timing of Vacation Time.

18. The Debtor's Employees accrues Vacation Time based on the Employees' length of employment as follows:

| Total Years of Service | Vacation Days Per Year | Maximum Accrual Amount |
|---|---|---|
| 0 to 5 | 25 | 30 |
| 6+ | 30 | 35 |

19. Vacation Time begins accruing on the date of hire. Unused Vacation Time may be carried over to subsequent years up to the maximum accrual amounts listed in the chart above. The Employees also receives Holiday Pay for eleven (11) holidays each year.

20. As of the Petition Date, the Debtor estimates that it is responsible for unused Paid Time Off totaling approximately $4,000. These amounts, however, are not a current cash

obligation as the Employees are only entitled to be paid for accrued but unused Paid Time Off upon resignation or termination.[5]

21.   By this Motion, the Debtor seeks authority to remit prepetition Paid Time Off (if any) in a total amount not to exceed $4,000 for its Employees on account of such prepetition amounts and to continue its Paid Time Off policies in the ordinary course of business on a postpetition basis. The Employees will not receive an aggregate amount in excess of the statutory cap of $12,850 under Bankruptcy Code section 507(a)(4) on account of Employee Wage Obligations and Paid Time Off.

   ii.   *The Employee Expense Obligations*

22.   By this Motion, the Debtor seeks authority to pay all prepetition Reimbursable Expenses (as defined below) in the ordinary course of business. The Debtor routinely reimburses the Employees for certain expenses within the scope of their employment, including expenses for travel and out-of-pocket business related expenses (collectively, the "Reimbursable Expenses"). The Debtor typically processes complete expense reports seven (7) days after submission. As of the Petition Date, there may be certain outstanding Reimbursable Expenses previously incurred. The Debtor typically pays approximately $10,000 in Reimbursable Expenses per month. The Debtor estimates that as of the Petition Date there are nominal prepetition Reimbursable Expenses outstanding, although there may be certain additional Reimbursable Expenses where a reimbursement request has not yet been received by the Debtor (the "Unpaid Business Expenses").

23.   To avoid unnecessary disruption, and due to the nature of delay sometimes associated with the timely submission of expense reports, the Debtor seeks the authority to pay

---

[5] Employees terminated for cause are not entitled to be paid for any unused, accrued Paid Time Off.

the Unpaid Reimbursable Expenses in an amount not to exceed $10,000 and to continue to honor such Reimbursable Expenses in the ordinary course of business postpetition.

**D.    Employer Taxes and Deductions**

24.    The Debtor routinely withholds from Employee paychecks amounts that the Debtor is required to transmit to third parties (the "Employer Taxes and Deductions"). The Employer Taxes and Deductions include deductions for child support and withholdings related to social security, Medicare and Medicaid, federal, state, and local income taxes, and employment insurance. As noted above, the Debtor administers its payroll and the disbursements of payroll funds to Employees through Kronos. Kronos calculates the amounts of the necessary disbursements to the relevant taxing or other authorities for the Employer Taxes and Deductions. The Debtor uses Ceridian Tax Services to remit the Employer Taxes and Deductions.

25.    As of the Petition Date, the Debtor estimates that it does not hold any accrued but not remitted Employer Taxes and Deductions for its Employees (the "Unremitted Employer Taxes and Deductions"). By this Motion, the Debtor seeks authority to continue collecting and disbursing the Employer Taxes and Deductions in the ordinary course of business on a postpetition basis.

**BASIS FOR RELIEF**

26.    Bankruptcy Code sections 507(a)(4) and (a)(5) provide that the Debtor's Employees have priority claims for accrued wages, salaries, commissions, vacation, severance, sick leave and contributions to employee benefit plans. 11 U.S.C. §§ 507(a)(4) and (a)(5). The Employees' aggregate priority claim is limited to $12,850 under the Bankruptcy Code. *Id.* The Debtor believes that the Prepetition Wage Obligations and other benefits earned within one hundred and eighty (180) days of the Petition Date that the Debtor seeks to pay are entitled to

priority status under Bankruptcy Code sections 507(a)(4) and (a)(5)[6] and do not exceed the statutory cap of $12,850 per Employee.

27.    Additionally, the Court has the authority under Bankruptcy Code sections 105(a), 1107(a) and 1108, 363(b) and the "necessity of payment" doctrine to grant the relief requested herein. The payments to the Employees are vital to the Debtor's ability to transition smoothly into chapter 11 and preserve its going concern value.

28.    Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition employee obligations in appropriate circumstances. Pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors-in-possession are authorized to operate the business while maintaining a "fiduciary duty to act in the best interest of the estate as a whole, including its creditors, equity interest holders and other parties in interest." *LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d 279, 292 (D. Del. 2000). Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Some courts have noted there are instances in which a debtor can fulfill this fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* In the instant case, the Debtor is operating as a debtor-in-possession

---

[6] For the purposes of the priority treatment of wages, salaries, and related benefits under Bankruptcy Code section 507(a)(4), courts recognize that individuals who are "independent contractors" are entitled to the same priority as "employees." *See, e.g., In re Corcoran*, 2010 Bankr. LEXIS 4721, at *2-3 (Bankr. D. Haw. Dec. 16, 2010) (" . . . Congress has steadily broadened the scope of the 'wage priority' provisions, in part expressly to overrule court decisions that independent contractors were not entitled to priority. . . . Recent cases hold that independent contractors can assert wage priority claims."); *In re Wang Lab.*, 164 B.R. 404, 408 (Bankr. D. Mass. 1994) ("the term "'wages' [is intended by Congress] to include compensation paid to [all natural] persons, whether employees or independent contractors").

consistent with Bankruptcy Code sections 1107(a) and 1108 and payment of the Employee Obligations is necessary to protect and preserve the Debtor's going concern value and maximize its value for all creditors and stakeholders. Thus, the Court should authorize the relief requested in this Motion.

29. Additionally, Bankruptcy Code section 363(b)(1) states in pertinent part that: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." If the debtor's determination to use estate assets represents a reasonable business judgment, the bankruptcy court should approve such use. Moreover, this Court has approved the payment of prepetition claims of employees for wages, salaries, expenses, and benefits on the ground that the payment of such claims was necessary to effectuate a successful reorganization or liquidation. *See, e.g., In re Swift Energy Co.*, Case No. 15-12670 (MFW) (Bankr. D. Del. Jan. 5, 2016); *In re Endeavour Operating Corp.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Oct. 15, 2014); *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. Nov. 4, 2011); *In re Indianapolis Downs, LLC*, Case No. 11-11046 (BLS) (Bankr. D. Del. Apr. 8, 2011); *In re American Safety Razor Co. LLC*, Case No. 10-12351 (MFW) (Bankr. D. Del. July 30, 2010). Bankruptcy Code section 105(a) further provides, in pertinent part, that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The "necessity of payment" doctrine also authorizes the relief requested in this Motion because the Employees are indispensable to both the Debtor's operations and the successful resolution of this Chapter 11 Case.

30. It is critical that the Debtor continues, in the ordinary course, those personnel policies, programs, and procedures that were in effect prior to the Petition Date. If the checks issued and electronic fund transfers requested in payment of any of the compensation or other

Employee obligations are dishonored, or if such obligations are not timely paid postpetition, the Employees may likely suffer extreme personal hardship and may be unable to pay their daily living expenses. A loss of employee morale and goodwill at this critical juncture would undermine the Debtor's stability, and undoubtedly would have an adverse effect on the Debtor, the value of its assets, and its ability to achieve its objectives in chapter 11. As noted by the court in *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000), "the need to pay pre-petition employee wage claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted." *Id.* at 370.

31.   As part of the foregoing relief, the Debtor also seeks authority to pay all Employer Taxes and Deductions. The failure to make such payments may also subject the Debtor and its officers to federal or state liability. *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes); *DuCharmes & Co. v. Michigan (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Moreover, the monies payable for amounts held in trust like the Employer Taxes and Deductions generally are not property of a debtor's estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate"). The failure to transfer these withheld funds could result in hardship to certain Employees or others. Furthermore, if the Debtor cannot remit these amounts, the Employee may face legal action due to the Debtor's failure to submit these payments.

32.     Additionally, payment of Employer Taxes and Deductions that constitute "trust fund" taxes will not prejudice general unsecured creditors of the Debtor's estate as the relevant taxing authorities would hold priority claims under Bankruptcy Code section 507(a)(8) in respect of such obligations. Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties are not property of the Debtor's estate.

33.     The relief requested in this Motion is necessary to maximize of the value of the Debtor's assets and to achieve its goals in chapter 11. Accordingly, the Debtor submits that the relief sought herein is consistent with Bankruptcy Code sections 105(a), 507(a), and 541.

34.     Nothing in this Motion, nor any payments made by the Debtor pursuant to this Motion, shall be deemed an assumption or rejection of any employee benefit plan, employment agreement, other program or contract, or otherwise affect the Debtor's rights under Bankruptcy Code section 365 to assume or reject any executory contract between the Debtor and any Employee, plan administrator or service provider.

### BANKRUPTCY RULE 6003 SATISFIED AND REQUEST FOR WAIVER OF STAY

35.     The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

36.     Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a Motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a Motion to pay all or part of a claim that arose before the filing of the petition, but not a Motion under Rule 4001.

37. The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

38. Failure to satisfy obligations to Employees in the ordinary course of business will jeopardize Employee loyalty and trust, possibly causing the Employees to leave the Debtor's employ and thereby disrupting the Debtor's efforts in this Chapter 11 Case to the detriment of all parties in interest. Moreover, the Debtor's Employees relies on the Debtor's timely payment of its compensation and provision of benefits. Accordingly, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and seeks authority to pay and honor the Employee Obligations described herein.

39. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's operations, going-concern value, and its efforts to pursue a sale or restructuring of its business.

40. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

## NOTICE

41. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtor's creditors holding the five (5) largest unsecured claims as set forth in the list filed with the Debtor's petition; (c) the Stalking Horse Bidder; (d) the Internal Revenue Service; (e) the United States Department of Justice; (f) the Securities and Exchange Commission; and (g) all parties who have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002.

42. In light of the nature of the relief requested in this Motion, the Debtor respectfully submits that no further notice is necessary.

## NO PRIOR REQUEST

43. No prior motion for the relief requested herein has been filed in this or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtor respectfully requests that this Court enter an order, substantially in the form attached hereto, (a) authorizing the Debtor, in its discretion, to pay and remit in the ordinary course of business (i) Prepetition Wage Obligations, (ii) Unpaid Reimbursable Expenses, and (iii) Unremitted Employer Taxes and Deductions; (b) authorizing, but not directing, the Debtor to continue in the ordinary course of business on a postpetition basis its (i) Employee Wage Obligations, (ii) Reimbursable Expenses, and (iii) Employer Taxes and Deductions; (c) authorizing and directing financial institutions to receive, process, honor and pay all related checks and electronic payment requests related to the foregoing; and (d) granting such other and further relief as is just and proper.

Dated: November 30, 2018
Wilmington, DE

**LANDIS RATH & COBB LLP**

_____
Adam G. Landis, Esq. (No. 3407)
Matthew B. McGuire (No. 4366)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
          mcguire@lrclaw.com
          pierce@lrclaw.com

*Proposed Counsel to the Debtor and Debtor-In-Possession*